May I please declare Bob Thelmuth and Don Reyes for Shames and the Class of California at Ronald Clark Consumers. Don, I'd like to reserve two minutes. I'm going to try to reserve two minutes. May I wipe your back, please? Thank you. I appreciate it. The issue we have is whether the California Tribal and Tourism Commission, the CTTC, should be included in this action. This is about the trial court's holding that CTTC meets both prongs of the carefully drawn Parker v. Brown case for state action qualification. The complaint urges two separate antitrust violations. They're both contained in AB 2592, a gut-in-the-mind, last-minute bill in the legislature at the end of the 2006 session. And it really has two provisions in it that are relevant to this case. Prior law provided that all of the charges, or almost all of the charges, for rental cars were to be bundled in one base charge so that consumers were not surprised when they turn in their car and get their bill and then take the shuttle to the airport. But the industry pointed out that there's a 9 percent airport concession fee that was paid at the airport. They didn't get it. Someone else was getting it. The consumer shouldn't think they're getting it, and therefore they should be allowed to separately itemize it, disaggregate it from that base rate sum. And that is permissible now under state legislation, correct? Yes, that is correct, and that was the first win. More clarity, more information to the consumer. That was the first win in 2592 as it was proposed. The second win was that the industry would help the general fund by helping to fund the CTTC budget by picking up first $7 million in its first year and then increasing the CTTC budget so that eventually it would be over $30 million coming from industry to help fund this promotional agency. But as this complaint documents, the industry took the 9 percent concession fee and instead of just separately stating it, in January 1 of 2007, every one of them added it on to the bill. Now I don't want to talk about that violation here because the second violation, the second violation is the one that really is the basis for the CTTC's inclusion in this case more fundamentally. And that's the violation that we allege occurs because the CTTC commission, instead of taking the money from the industry as was promised and as the statute provides, instead arranged a horizontal price fix of 2.5 percent to be added on to the bill by the consumer. Now we contend that this action, this 2.5 percent bill add-on, has to meet the two-pronged test of property ground. It's price fixing, it's horizontal, it's industry-wide, it's per se offense if it's not protected by state action defense. So we have the two prongs. Number one, clearly articulate and affirmatively expressed. Prong number one. Now what you have to look at is look at the statute. The statute, AB 2592, does say that the CTTC's charge is defined where a company chooses to pass it on as the charge collected by a rental company from a renter that has been established by the CTTC, very important now, pursuant to section 13995.65 of the government code. We're going to call this .65, the key .65 section of the government code. Written right into the statute. What does pursuant section provide? What does that pursuant section provide? Well, H provides that the CTTC is supposed to figure out how much is going to be assessed from this industry. How does it do it? It's not that complicated. You take the revenue of each of the seven rental car companies. You figure out what percentage each has as a market share, and that's the assessment. So if it's $30 million to do under the statute, under the statute's formula, and Hertz does one-third of the market share, it's billed $10 million. $10 million over $30 million. That's their job. It's mathematical. It does not require discretion. It does not require a restraint of trade. It does not violate the antitrust law. More critical, then, is sub F of .65. This is the most critical section in the entire statute for purposes of our argument, and I'm going to read it, and I want it to be understood very carefully. Notwithstanding any other provision of law, an assessed business, singular, may pass on some or all of the assessment to customers. An assessed business, singular, that is passing on the assessment, may but should not be required to separately identify or itemize the assessment on any document prior to a customer. In other words, the statute explicitly reinforces the antitrust default rule that an assessment of an industry does not imply the pass-through agreement by that industry in order to raise the monies that are being assessed. What it sounds like you're alleging is between the Travel and Tourism Commission and the rental car companies is really some kind of a conspiracy, which I thought that the Supreme Court rejected in the City of Columbia case. So I'd be interested in your view as to why that claim wouldn't be knocked out by City of Columbia. Well, City of Columbia, if you're talking about an ordinance which gives clear authority to regulate signs and you're talking about sign size, you're talking about something that's countenanced in the land use policy that's involved. We're talking here about a very specific authority to raise money, and it exists in all sorts of contexts. And the question the Court raises below is, is it reasonably foreseeable, and that's the term she used, that's what she relies upon, that there would be this pass-through. And I want to address that. But the point of the Supreme Court's ruling isn't that it relates solely to signs, but it's that there's no conspiracy exception in the state community arena. Yes. And isn't what you're essentially alleging is a conspiracy among these actors? Yes, there's a conspiracy among these actors, and it's not immunized because there's no clearly articulated and affirmatively expressed state. Yes, the rental car companies are getting together to be sure. So does your argument in the end rest on the fact that business is singular rather than plural? It rests on the fact that the statute does not give the businesses plural the authority to get together and do anything as to the amount to be charged by consumers or to consumers. The statute made it permissive? Yes. To make this pass-through? Yes. Not only does it make it permissive, but I have to say that the CTTC, this defendant, in the next case, in its brief, says nine times just that, contrary to what it says in our brief. In other words, it acknowledges over and over again that this is a permissive pass-through. You can if you want to. What the trial court said is, well, it's reasonably foreseeable they're going to pass it through. Why else would they vote for it? So they all kind of did it. It's reasonably foreseeable, not that they would act in conscious parallelism, but it's reasonably foreseeable that the legislature would have intended it. What she's saying is the legislative intent is there because everyone expected that to happen. And my answer to that is this. If OPEC goes up $10 a barrel, is it reasonably foreseeable that we're going to have an increase of the pump? Yes, it is. Is it reasonably foreseeable that Exxon, ARCO, Chevron, and BP Petroleum are going to get together and come to an amount, 2.5 percent or some other number, that that pass-through is going to consist of? That is not reasonably foreseeable. That is the extra step that was taken here that is not reasonably foreseeable, that was not articulated or firmly articulated. The opposite was firmly articulated. When you say, if you want to, some or all, you're saying something very different than what the- But the setting of the all, which is the 2.5 percent, are you disputing that they, as part of this California tourism setup, don't all sit together and figure out what the all is? Well, they do. Then that's not illegal, right? The all is $30 million and your share is $10 and your share is $8 and your share is $6. That's legal. That's mechanical. That's fine.  You know, we all pay, most of it is from $400 to the state bar every year. And pharmacists pay money. We're all assessed money. We're not allowed to agree on how much we're going to bill the client. That's not the default rule. We're not allowed to get together and say, if we're going to add on 1 percent, we can't do that. That's what they did here. Now, the other part of this- We have one minute left. Would you like to say that? I'll reserve it then. I'll reserve it. May it please the court. Good morning. My name is Scott Cameron. I represent, I believe, defendant in this matter, California Travel and Tourism Commission. Put the microphone a little closer to you or step a little closer to it. How's that? That's great. Thank you. Your Honors, I'd like to point out that what's at stake here is almost $100 billion and a million jobs in a struggling state's economy. That's what tourism provides to this state. The central question in this appeal, in this case, is can the California- Does that matter if there's an antitrust violation? I think it is, Your Honor. The central question is can the state promote tourism, which provides this, even if doing so might impede or some might claim impedes the free operation of the open market? Well, I think he said there's no problem with collecting this. And so you're going to get the money one way or the other. The question is are they going to be able to get together to collude in the view of Mr. Shames to have the precise pass-through amount? So you get your money one way or the other. I'm having a little trouble understanding why we're going to sink the tourism business if we were to rule in favor of the plaintiff. Well, Your Honor, the state, in its deliberative process, decided that furthering the tourism industry in California, promoting tourism, was a vital state interest. And as the district court correctly found, it was entitled to state action immunity when it did so in the CTTC. The commission was entitled to state action immunity for its alleged role in this conspiracy because it meets the first prong of the Mid-Cal two-prong test and it doesn't have to meet the second. The key there is as a state agency, which the district court correctly found, it only has to satisfy the first prong. And also the first prong is modified according to the Supreme Court and Charlie's Taxi in the Ninth Circuit. The specific authorization of conduct that plaintiffs are arguing doesn't apply to a state agency. The district court was absolutely correct when it relied on a reasonably foreseeable standard. The clearly articulated state policy to displace competition need only be something that the legislature clearly contemplated in enacting the legislation. Well, this is a slightly different group than, say, the Board of Regents of the university system. Wouldn't you agree? I would agree it's a different group. And it's unusual in the sense of industry domination in the group? I don't think it's industry dominated at all, Your Honor. I mean, if you look at the commission and is it really a state agency? I don't think there's any way it can't be. It was enacted by the beach. It was established by statutory mandate to fulfill one purpose, an exclusively governmental function of promoting the state of California itself as a tourist destination. It's subject to commissioners are appointed by the governor's. Excuse me. Twelve commissioners are appointed by the governor. Thirteen, if you count the secretary, Your Honor. And 24 come from the tourism industry? 24 come from five separate competing segments. Yes, Your Honor. And no one segment. I thought I heard you say this was government dominated. Well, Your Honor, the majority here, the one controlling governing block, or if you will, is the 13 commissioners appointed by the governor. The others all come from different competing industries. They don't have a common interest other than. The question was, is it industry dominated, not specific industry dominated? I think there's no question. I don't know why you're debating the point that industry, if it votes as a block, can outvote the government interest, right? Certainly, Your Honor. So why isn't that industry domination? I understand the second part of your argument, but I don't understand why you're conceding, why you continue to say the government. It's a government run, government dominated board. Because, Your Honor, even looking at what the interests are, the only interest that the industry has, if we're going to call it one industry, is getting the tourism dollar to California or keeping it here once it gets here. That is exactly the state's interest. Once it gets here, each of them compete for that dollar. So it's not like one. If the industry got together and rose up against the government to impose its own interest, that's to bring the tourist dollar to California, exactly what California's interest is. The fact that we have private industry representatives is no different than the board and Johans, no different than the Parker, and no different than Haas, the Florida Windstorm Authority. Every one of them has private representatives on the board. They're not all state employees. And each of them was found to be a state actor for immunity purposes. That is a question as to whether, do we get to that point? I mean, you first look to see if there's an affirmative state policy, right? Yes, Your Honor. What is the state policy you're relying on that would permit the rental car companies to get together to figure out whether there's the pass-through or not? Well, Your Honor, what's required under the first prong of Mid-Cal is a state policy that foreseeably displaces competition. And here we have the state policy, which the state expressed as a vital interest to promote tourism. Now, did it foreseeably displace competition? Of course it did. How do we know that? The legislature said it did. It expressly provided for immunity against any lawsuit, civil or criminal, excuse me, not just lawsuit, for any anti-competitive conduct that results. We're in an odd posture here where only the Tourism Commission is in front of us as a result of the certification  That is correct, Your Honor. So if we rule in favor of the commission, does it affect the antitrust liability of the rental car companies, in your view? Your Honor, they have not asserted a defense for state action immunity. If they do so, that's certainly up to them. I don't have an opinion one way or the other as to what they'll do in the lower court case. Do you think that your commission rises and falls of its own accord unrelated to the rental car companies? Yes, Your Honor, I believe so. To make one correction, Your Honor, we've been accused, the commission's been accused of talking out of both sides of our mouths, if you will. And that's simply not the case. We've said the same thing, as you'll hear in both appeals. And that is the pass-through is absolutely permissive. It is not mandatory. But it was reasonably foreseeable that the antitrust or anti-competitive conduct could result. We've said the same thing in this brief and in the Comiskey brief. How do you respond to their argument that says, well, pass-through is fine. It says any business can figure out what it wants to pass through. But that they're not permitted to get together. And it doesn't say the businesses can get together and figure out what to pass through. And that that's really the antitrust violation, doing that, you know, under the shadow or with the countenance of the commission. Your Honor, if the legislature didn't contemplate that there could well be antitrust or anti-competitive behavior, there would simply be no reason for it to expressly immunize that conduct. What's required here, what the statute requires is that the commission facilitate an agreement among horizontally arranged competitors to do two things, whether to fund the promotion of tourism. And if that agreement was reached, how to do so. And that's exactly what the complaint alleges, that the commission arranged this agreement to fund tourism. And that the resulting agreement passed through the assessment fee on the consumers. And the legislature said, if you do that, if you fund the tourism, your conduct is immune. And frankly, Your Honor, I believe that you were... You didn't really say you can all agree on whether or not you're going to pass the cost on to the consumer. It just allowed the rental car companies to do that if they wish. So where in the statute is there an express endorsement of this agreement? Your Honor, the... Or the ability of everyone to get together around the table and say, we're going to engage in anti-competitive conduct. And so... The express grant of immunity for doing that, Your Honor. If not that, there's no reason to put that code section in there. It would simply have no other function. Was that the immunization in the authorization statute all the way through? My understanding is there were some changes along the way, correct? There was a change in 2007. The authorization, the express grant of immunity, pre-existed that. It was in the initial statute. And the legislature saw fit to leave it exactly like it was, granting the broadest immunization that it could. And this was after the provision was added about allowing the pass-through? I don't understand, Your Honor. Wasn't there... Did the industry ask for the opportunity to have the permissive ability to pass the fee through? Yes, Your Honor. And that was contained in AB 2592, the January 2007 amendment. Okay. Thank you. Thank you, Your Honor. Very quickly, Your Honor. First of all, the antitrust immunity provision he's referring to in the statute begs a question. There's an antitrust immunity provision in the statute if you comply with the statute. That's the precondition. And, of course, they didn't, as you pointed out. Furthermore, you cannot immunize yourself in state law from federal antitrust immunity. You have to meet those two prongs. And one is specifically affirmatively authorized by state law. You don't authorize by state law by just saying anything we do is okay, it's immune. That doesn't meet that test. So you've got those two problems. Secondly, I want the court to be really clear that the CTTC is involved here in this combination conspiracy at the gut level. It's doing it. It's not supposed to, but it's doing it. You have national rental car. We have hot documents here you normally don't see in an antitrust case. I was a seven-year antitrust prosecutor. I never saw documents like this. You have national rental car emailing the CTTC saying, hey, we're monitoring our opponent's emails and our opponent's billing, and we see Avis is apparently trying too hard and is not including the 2.5 percent. We've got to do something about that. CTTC responds by we're going to put it on the agenda. It's unfair billing practices on the next agenda. Avis stops doing it. So we have a CTTC doing more than simply getting involved. It's enforcing this unlawful conspiracy. Thank you, Your Honor. Thank you. Thank both counsel for your argument this morning. The case of Shames v. Hertz Corporation is submitted.
judges: Hawkins, Thomas, McKeown